Eleni Melekou
Pardalis & Nohavicka, LLP
950 Third Avenue, 11th Floor
New York, NY 10022
Telephone: 212-213-8511
Facsimile: 718-777-0599
*Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

--------------------------------------------------------------------x

GIANNIS ANTETOKOUNMPO,

                                Civil Case No.  23-cv-1389

                *Plaintiffs*,

          -against-                       **COMPLAINT**
                                     **JURY TRIAL DEMANDED**

MAREE INC. and ERICA GLEATON,

                *Defendants*.

--------------------------------------------------------------------x

      Plaintiff, GIANNIS ANTETOKOUNMPO ("Antetokounmpo" or "Plaintiff"), an individual, by and through his undersigned attorneys, PARDALIS & NOHAVICKA, LLP, hereby alleges the following against Defendants MAREE INC. ("Maree") and ERICA GLEATON ("Gleaton") (Maree and Gleaton, collectively, the "Defendants").

### NATURE OF ACTION

      1.     Plaintiff brings this action for breach of contract, fraudulent representations under Wisconsin Statutes Section 100.18, unfair and deceptive business practices under Wisconsin Statutes Section 100.20, false endorsement, violation of Antetokounmpo's Rights of Privacy under Wisconsin Statutes Section 995.50 (2)(3), breach of the implied warranty of fitness, and unjust enrichment.

      2.     This action arises out of Defendants' fraudulent representations regarding the quality of their products. As a result of Defendants' inaccurate and deceptive description of their products and services, Plaintiff placed an order of four (4) beds with Defendants to be

1

delivered in Athens, Greece. Defendants failed to deliver the beds according to the quality and specifications agreed upon and promised. As a result of Defendants' fraudulent representations and breach of contract, Plaintiff incurred significant pecuniary damage.

3.      Moreover, the Plaintiff is a widely known, extremely successful and popular basketball player. He has millions of fans, and he is currently one of the most well-known basketball players in the world. Aside from his basketball career, Plaintiff has been using his name and likeness (the "Antetokounmpo Rights") in commerce throughout the United States and the rest of the world.  The Antetokounmpo Rights have been the subject(s) of licenses granted by Antetokounmpo to third parties to use and exploit such rights on or in connection with various goods and services.

4.      The Defendants used the Antetokounmpo Rights without Plaintiff's authorization or consent by posting a photograph depicting the Plaintiff on their Instagram account, implying that the Plaintiff endorses or is otherwise somehow affiliated with Defendants.

5.      To date, despite Plaintiff's multiple efforts to contact the Defendants, Defendants have failed to cooperate with Plaintiff and comply with their contractual obligations by fixing or substituting the defects of their products or issuing a refund to Plaintiff.

6.      Moreover, Defendants have refused to cease using the Antetokounmpo Rights for advertisement and commercial purposes despite having received a cease-and-desist letter from Plaintiff. Such actions further undermine Plaintiff's brand and diminish the need for, and thus the value of, licenses to use the Antetokounmpo Rights in connection with the endorsement or promotion of products.

7.      As a result of Defendants' wrongful conduct, Plaintiff brings this action for monetary and injunctive relief.

8.     Plaintiff, Giannis Antetokounmpo, is an individual residing in Milwaukee, Wisconsin. Plaintiff is an internationally famous athlete and professional basketball player, born in Greece and currently residing in the United States of America.

9.     Upon information and belief, Defendant, Maree Inc, is a foreign business corporation, with its principal place of business located at 240 N. East Promontory, STE 200 Farmington, UT 84025. Defendant Maree Inc is a company that provides luxury custom-made beds and bed linens.

10.    Upon information and belief, Defendant Gleaton is an individual residing in Salt Lake City, Utah.

11.    Upon information and belief, Defendant Gleaton is the founder and Chief Executive Officer of Defendant Maree.

## JURISDICTION AND VENUE

12.    This action arises under the Lanham Act and the statutory and common laws of the State of Wisconsin. This Court has subject matter jurisdiction over this action over Plaintiff's federal claims under 15 U.S.C. § 1125 and 28 U.S.C. §1331 and 1338(a).

13.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1367(a), because they are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as there is diversity between the parties and this matter involves a controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

15.    Personal jurisdiction exists over Defendants in this judicial district pursuant to FRCP 4 (k)(1)(a), and Wis. Stat. § 801.05(4) and (5) or, in the alternative, Federal Rule of Civil

Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Wisconsin and in this judicial district, and/or derive substantial revenue from business transactions in Wisconsin and in this judicial district, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Wisconsin, such that this Court's assertion of jurisdiction over Defendants do not offend traditional notions of fair play and due process, and/or Defendants' unlawful conduct and infringing actions caused injury to Plaintiff in Wisconsin and in this judicial district, such that Defendants should reasonably expect such actions to have consequences in Wisconsin and in this judicial district, for example:

a) Upon information and belief, Defendants have been systematically directing and/or targeting business activities at consumers all over the country, including Wisconsin, through websites and social media platforms where consumers can place orders.

b) Defendants offer their products on websites which provide information about and describe the goods sold within the State, and they solicit or serve customers within this State.

c) Upon information and belief, Defendants are aware of Plaintiff' endorsement and exclusive rights to the Antetokounmpo Rights. Defendants are aware that the infringing actions, alleged herein, are likely to cause injury to Plaintiff in Wisconsin and in this judicial district, specifically, as Plaintiff conducts substantial business in Wisconsin.

16. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because acts giving rise to this complaint occurred within this judicial district.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

17. On or around March 2, 2023, Plaintiff and his partner, Mariah Riddlesprigger (hereinafter "Riddlesprigger") contacted Defendant Gleaton, via text message from Wisconsin,

4

to inquire about Maree's products and the possibility of shipping Maree's products to Athens, Greece.

18.     On March 18th and 24th, 2023, Plaintiff and Riddlesprigger requested, via text messages to Defendant Gleaton, additional price quotes for orders intended for Plaintiff's family members.

19.     On March 24th, 2023, Defendant Gleaton provided lookbooks[1] to assist in design selection and proffered custom-made designs.

20.     From April 3rd to 21st, 2023, Plaintiff and Riddlesprigger engaged in communications with Defendant Gleaton detailing product specifications, quality, and price.

21.     On April 6th, 2023, Defendant Gleaton sent to Riddlesprigger, via text message, five (5) estimates for custom-made beds for each of Plaintiff's family members.

22.     On or around April 14th, 2023, Antetokounmpo placed an order with Maree for custom-made beds, with a delivery expectation on June 14, 2023. *See,* Exhibit 1.

23.     The total price of the goods ordered was Ninety-Two Thousand Three Dollars ($92,003.00).

24.     Defendant Gleaton offered a twenty-five percent (25.0%) discount on the final price as part of a future promotional agreement with Plaintiff.

25.     On April 28th, 2023, Plaintiff sent two (2) wire payments of Forty Thousand Dollars ($40,000.00) to Maree to be applied towards the payment of the issued invoices.

26.     Despite the above commitments, Defendant Gleaton did not communicate or inform Plaintiff that the manufacturing of the beds would commence until May 1st, 2023.

---

[1] Furniture lookbooks are collections of designs and styles showcasing various furniture pieces and their features. They are commonly used by interior designers, furniture shoppers, and homeowners as a source of inspiration or a way to browse different furniture options. A furniture CG lookbook can feature a specific type of furniture, such as sofas or chairs, or showcase a range of furniture pieces that are part of a more extensive collection or brand. *See,e.g.,*https://en.m.wikipedia.org/wiki/Lookbook#:~:text=A%20lookbook%20is%20a%20collection,what%20the%20latest%20fashions%20are.

27.     Despite paying Defendants for the manufacturing and shipment of five (5) beds in Greece by June 14, 2023, Defendants failed to make any delivery until July 13th, 2023.

28.     Upon receipt of the order, Plaintiff observed significant discrepancies in the Maree products delivered, as Maree failed to deliver beds with the promised quality and specifications.

29.     Specifically, there were issues related to the assembly of the beds delivered. On one bed, the headboard lacked the necessary fittings to connect properly with the rest of the bed frame, and the legs and bases of the beds were missing rendering the bed frame unusable.

30.     Another bed was delivered with a defective, torn fabric, while the screws provided did not fit properly, thereby leading to improper attachment of bed slats.

31.     Overall, many items of the order were missing, while many of the bed components delivered were substandard or exposed significant defects that rendered the beds unusable.

32.     Plaintiff attempted to resolve the issue with Defendant Gleaton, directly, who became irresponsive. In total, Plaintiff and Riddlesprigger attempted to call Defendant Gleaton at least twenty (20) times to no avail.

33.     On or around July 31st, 2023, Plaintiff, through his attorneys, sent a demand letter to Defendant Gleaton setting forth the specific issues of Defendants' failure to deliver goods according to the agreed specifications, Defendants' material misrepresentation of product quality and shipping weight. Specifically, Maree provided incorrect shipping information to the shipping company Mentfield Logistics UK Ltd ("Mentfield"). This discrepancy of approximately four hundred kilograms (400kg) led to delays and additional expenses for Plaintiff, as the air-freight carrier was unable to transport the items by the expected date. *See,* Exhibit 2.

34.     Furthermore, Defendants unilaterally changed the shipping terms. Contrary to what was agreed upon between the parties, Defendants informed Mentfield that Maree would only pay for the first of the four shipments. Plaintiff was under the understanding that the total purchase price included the cost of shipping for all shipments.

35.     To date, Plaintiff has only received eleven (11) over the forty-three (43) items delivered.

36.     Moreover, Plaintiff has incurred shipping costs exceeding Twenty Thousand Dollars ($20,000.00).

37.     A full refund was requested of the amount of Ninety-Five Thousand Three Hundred Ninety-One Dollars and Sixty-Five Cents ($95,391.65).

38.     In addition to the afore-mentioned unlawful conduct, Defendants posted a photograph of the Plaintiff depicting Antetokounmpo Rights, formerly posted on July 21st, 2021, on Plaintiff's Instagram profile by Plaintiff, on Maree Inc.'s official Instagram account via "in-feed post" without Plaintiff's permission or consent.

39.     Despite having received Plaintiff's letters dated July 31st, 2023 and August 24, 2023, which explicitly prohibited Defendants from using Plaintiff's photograph for promotional, commercial, or advertising purposes, Defendants have refused to comply and cease their infringing activities. *See,* Exhibit 3.

**FIRST COUNT**

**BREACH OF CONTRACT AGAINST BOTH DEFENDANTS**

40.     Plaintiff repeats and realleges all allegations as if fully set forth herein.

41.     As previously stated, a contract was formed between the parties for the delivery of custom-made beds and bedding linen, including terms, specifications, and delivery dates.

42.     The Plaintiff wired Defendants the money on April 28th, 2023, indicating that he upheld his part of his performance under this agreement.

7

43.     Defendants failed to deliver the products within the agreed-upon time frame.

44.     Defendants delivered products that did not match the agreed-upon quality and specifications, delayed the delivery, and deviated from the agreed-upon contractual terms.

45.     Overall, Defendants failed to uphold their contractual obligations to deliver the agreed-upon products, leading to Plaintiff's financial injury.

46.     Defendants breached the contract by failing to deliver the products according to Plaintiff's specifications and as agreed with Plaintiff.

47.     Defendants' breach of contract was with knowledge and wilful since Defendants delivered substandard products and, subsequently, became unresponsive and refused to cooperate with Plaintiff.

48.     Due to Defendants' material breach of contract, Plaintiff has incurred damages in an amount to be determined at trial, together with his legal costs, attorney's fees, and interest.

## SECOND COUNT

## FRAUDULENT INDUCEMENT

49.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

50.     Defendants wilfully and with intent engaged in and perpetrated a fraudulent scheme whereby it misled its customers, including Plaintiff, with its false and deceitful representations.

51.     Plaintiff relied on these representations made by the Defendants in good faith and without knowledge of their falsity.

52.     Defendants directly and indirectly, individually or in concert, engaged in acts, practices, and courses of dealing that constitute common law fraud in factum and fraud in the inducement.

53.     Defendants intentionally and knowingly made false and fraudulent statements

of material fact to Plaintiff by misrepresenting to Plaintiff that Defendants' products are of higher quality and luxury products.

54.     Specifically, on Defendants' website (located at https://www.mareeco.com), the company falsely touts that it offers "the most luxurious bed in the business," and that their "custom-built beds are designed to deliver luxury."

55.     Defendants knew that Plaintiff relied upon Defendants' representations for the purpose of buying custom-made beds.

56.     Defendants made misrepresentations to Plaintiff that were false as to the nature of the products being purchased and sold. These false representations were knowingly made to Plaintiff to induce it to place an order with Defendants' business.

57.     These falsehoods were material as they were the key inducement that created appeal for Plaintiff to do business with the Defendants.

58.     Defendants knew of the falsity of the representations and ignored the truth or should have known that they were falsehoods or knew or should have known that they made the false representations to the Plaintiff.

59.     Defendants intended that Plaintiff act on these falsehoods and purchase product from Defendants in reliance thereon. Defendants knew or should have known that the Plaintiff was ignorant of the truth, because Defendants engaged in a pattern of deception and, in fact, refused to comply with the promised quality standards after having pocketed Plaintiff's funds.

60.     The false representations were knowingly made by the use of Defendants' website, social media accounts and advertising materials, as well as verbal and written representations by Defendant Gleaton, through invoices, order proposals, electronic mails, text messages and shipping documents forwarded by Defendant Gleaton and telephone calls in such a way that Plaintiff had good reason to rely on the misleading representations.

9

61.     Defendants' fraudulent representation constitute a violation of Wisconsin Statutes Section 100.18.

62.     As a result of the foregoing, Plaintiff has been damaged for which it is entitled to and demands compensatory damages, treble damages, punitive damages, and attorneys' fees.

## THIRD COUNT

### DECEPTIVE ACTS AND UNFAIR TRADE PRACTICES
### (Wisconsin Statutes Section 100.20)

63.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

64.     Defendants' activities consist of deceptive acts and practices in the conduct of their furniture business.

65.      Defendants' aforementioned deceptive acts are aimed at consumers and are materially misleading with respect to the product quality and fitness for use.

66.     Defendants' use of the Antetokounmpo Rights is intended to deceive consumers as to the source, sponsorship, and affiliation or approval of Defendants' products, and/or falsely suggest that Defendants are somehow legitimately affiliated, connected, or associated with Plaintiff, all the while neither of the Defendants are so affiliated, connected, or associated.

67.     Plaintiff has been, and will continue to be, damaged by Defendants' deceptive acts and practices in an amount to be determined at trial.

68.     Defendants has caused, and will continue to cause, irreparable injury to Plaintiff and to the public unless restrained by this Court, pursuant to Wisconsin Statutes Section 100.20.

## FOURTH COUNT

### FALSE DESIGNATION OF ORIGIN, PASSING OFF AND UNFAIR COMPETITION
### [15 U.S.C § 1125(A)/Lanham Act § 43(A)]

69. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

70. Plaintiff, as the owner and assignee (respectively) of all right, title, and interest in and to the Antetokounmpo Rights, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

71. Antetokounmpo has continuously and extensively marketed products and entered into licensing and endorsement agreements in connection with the Antetokounmpo Rights, including but not limited to agreements for the use of his name, nickname, likeness, image, pictures, and other personal attributes.

72. As a result of Plaintiff's continuous use of his name, image, and likeness in commerce, his name has become inherently distinctive, and it is widely recognized among consumers as a source-identifier of Plaintiff's products.

73. Defendants' unauthorized use of the Antetokounmpo Rights in connection with his bed, bed linens, furniture, and potentially other related products cause confusion, mistake, and deception as to the source, sponsorship, or approval of Defendants' products by Plaintiffs and results in the mistaken belief that Defendants' products are somehow legitimately affiliated, connected, or associated with Plaintiff.

74. By advertising, marketing, promoting, distributing, offering for sale products by using the Antetokounmpo Rights, Defendants have traded off of Plaintiff's goodwill and his products, thereby directly and unfairly competing with Plaintiff.

75. Defendants knew, or by the exercise of reasonable care should have known, that the use of the Antetokounmpo Rights would cause confusion, mistake, and deception among consumers and the public of the kind described herein.

76. Defendants' aforesaid acts constitute willful unfair competition with Plaintiff,

in violation of the Lanham Act, 15 U.S.C. § 1125(a).

77.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive consumers and were performed with the intent to trade on the goodwill and reputation of Plaintiff.

78.     Defendants willfully continued to use Plaintiff's image without Plaintiff's consent in light of the demand letter dated July 31, 2023.

79.     By reason of aforesaid acts, Plaintiff has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill, and will sustain loss of revenue and profits.

80.     Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff.

81.     Plaintiffs have no adequate remedy at law for Defendants' wrongful acts.

## FIFTH COUNT

## VIOLATION OF PLAINTIFF'S RIGHT OF PRIVACY

82.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

83.     Defendants knowingly used Plaintiff's name, image, and likeness, which form part of Plaintiff's identity; such use resulted in Defendants' commercial advantage; such use was made without Plaintiff's consent; and Plaintiff has been injured financially because of such use.

84.     Defendants used Plaintiff's name, portrait, and likeness through a social media platform, which is accessible by and targets consumers throughout the United States of America, including Wisconsin.

12

85. Defendants has therefore committed an actionable wrong under Wisconsin Statutes Section 995.50 (2)(3) and is liable to Plaintiff for such remedies as are afforded it under the same statute.

## SIXTH COUNT

## BREACH OF IMPLIED WARRANTY OF FITNESS

86. Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

87. Pursuant to the Uniform Commercial Code ("UCC") § 2-314, Maree is a merchant with respect to the above-referenced furniture.

88. As a result, there exists an implied warranty that Maree's products are fit for use as beds.

89. Maree marketed and advertised its beds as luxury furniture whose quality exceeds the market standards.

90. Maree's marketing and advertising constitutes express warranties.

91. Defendants represented to Plaintiff that Maree's beds were fit for the particular purpose.

92. Plaintiff justifiably relied on Defendants' representations about the furniture he purchased from Maree.

93. Maree failed to disclose that its products will be delivered in a substandard quality with missing or defective components.

94. The products that Maree sold to Plaintiff were not fit for their ordinary and intended purpose in violation of the UCC § 2-315.

95. Based on the foregoing, the products delivered were a complete and utter loss to Plaintiff.

96. Accordingly, Plaintiff has been damaged in an amount to be determined at trial,

together with applicable interest, costs, and attorneys' fees.

## SEVENTH COUNT

## UNJUST ENRICHMENT

97.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

98.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

99.     Defendants' retention of monies gained through his deceptive business practices, acts of deceit, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against the Defendants, and that a judgment be entered in his favor, as follows:

A.     Awarding Plaintiff compensatory damages, on all counts, including a full refund amount of Ninety-Five Thousand Three Hundred Ninety-One Dollars and Sixty-Five Cents ($95,391.65);;

B.     Granting Preliminary and permanent injunctive relief enjoining Defendants and their agents, attorneys, employees, and all others in active concern or participation with them from:

(a) any further acts of violation or misappropriation of the Antetokounmpo Rights.

(b) using Plaintiff's name, image, or likeness unless expressly and specifically authorized by Plaintiff;

(c) doing any act or thing that is likely to dilute the distinctiveness of Plaintiff's brand or that is likely to tarnish the goodwill associated with it.

14

C.	Ordering Defendants, pursuant to 15 U.S.C. § 1116 (a), to file with the Court, and serve on counsel for Plaintiff a sworn statement setting forth in detail the manner and form in which Defendants have complied with the injunction, within thirty (30) days after the entry of an Order directing an injunction issued by this Court,

D.	All exemplary and/or punitive damages to which Plaintiff is entitled under statutory or common law;

D.	Trebling of all monetary, actual, and/or statutory damages sustained and to be sustained by Plaintiff as a consequence of Defendants unlawful conduct, s pursuant to 15 U.S.C. § 1117, Wisconsin Statutes Section 402.711, and/or any other applicable statute;

E.	Pre-judgement and post-judgment interest according to law;

F.	Plaintiff's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117, Wisconsin Statutes Section 995.50(1)(c), and/or any other applicable statute, together with the costs and disbursements of this action; and

G.	such other and further relief, favorable to the Plaintiff, that the Court deems just and proper.

Dated: October 17, 2023
	New York, New York

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

**By:**/s/ *Eleni Melekou*
	Eleni Melekou, Esq.
	*Attorneys for Plaintiff*
	950 Third Avenue, 11th Floor
	New York, NY 10022
	T: 212.213.8511
	E: Eleni@pnlawyers.com

15